· Robert HURST, Respondent,

v.

NISSAN NORTH AMERICA, INC., Appellant.

No. SC 95707

Supreme Court of Missouri, en banc.

Opinion issued October 5, 2017

Nissan was represented by John W. Cowden and David M. Eisenberg of Baker Sterchi Cowden & Rice LLC in Kansas City, (816) 471-2121; and Peter J. Brennan and Zachary C. Schauf of Jenner & Block LLP in Chicago, Illinois, (312) 222-9350.

The class members were represented by Kenneth B. McClain and Kevin D. Stanley of Humphrey, Farrington & McClain PC in Independence, (816) 836-5050; Michael W. Blanton of the Blanton Law Firm in Evergreen, Colorado, (303) 670-6994; and L. Benjamin Mook of Davis George Mook LLC in Kansas City, (816) 569-2629.

Paul C. Wilson, Judge

Robert Hurst, on behalf of a class of similarly situated plaintiffs ("Plaintiffs"), sued Nissan North America, Inc. ("Nissan") for violations of sections 407.010 to 407.130,[1] commonly known as the Missouri

---

1. All statutory references are to RSMo. 2000 unless otherwise noted.

Merchandising Practices Act ("MMPA"), based on alleged misrepresentations concerning the dashboards in certain Nissan Infinity FX vehicles. Following a jury trial, the trial court entered judgment requiring Nissan to pay $2,000 in damages to each class member identified in a claims process and $1.9 million in attorney fees. Nissan appealed. This Court granted transfer and has jurisdiction. Mo. Const. art. V, § 10. For the reasons set forth below, the judgment in favor of Plaintiffs is reversed and this Court enters judgment for Nissan.

## Background

The facts, taken in the light most favorable to the judgment, are as follows. Nissan manufactures a brand of automobiles under the name Infinity. Beginning in 2003, Nissan manufactured the two models at issue in this case, the Infiniti FX35 and FX45 (collectively, the "FX vehicles"). Approximately 118,000 FX vehicles were sold nationwide. Beginning in 2005, Nissan began receiving complaints that the dashboards in the FX vehicles were defective in that, when exposed to heat and humidity, many of the dashboards deformed or "bubbled." Nissan changed dashboard suppliers, but the defect persisted. Nissan changed suppliers again, and the number of defective dashboards dropped to 0.2 percent. When offering the FX vehicles for sale, Nissan provided a warranty covering defective parts, including but not limited to the dashboards. Nissan extended the length of this warranty with respect to the defective dashboards and, ultimately, replaced more than 45,000 dashboards without cost to the vehicle owners.

After preliminary litigation concerning class certification, *see Hope v. Nissan North Am., Inc.,* 353 S.W.3d 68 (Mo. App. 2011), the trial court certified a class for trial consisting of those who purchased FX vehicles in Missouri through the Nissan distribution system with the original manufacturer's dashboard. This class proceeded to trial solely on the theory that Nissan made affirmative misrepresentations in advertising the FX vehicles. The alleged misrepresentations included statements in various promotional materials to the effect that:

- The FX is a "premium" vehicle and a "leader in style."
- "Since its introduction, the FX has been a leader in style."
- The FX "embodies the Infiniti philosophy of combining design and performance in one luxurious package."
- The FX has a "High Tech Interior Accentuated with Luxurious Comfort."
- The FX encompasses "the comfort and amenities of a luxury car."
- The FX provides a "unique blend of uncompromising style and luxury."
- The FX provides "features that are both elegant and intelligent."
- The FX has "[a]n ergonomically designed, sport-inspired cockpit [that] embraces the driver and elevates the driving experience."
- The FX is a "premium" vehicle with a "premium automotive experience."
- Nissan has a "commitment to offer a superior product representing excellent value" and "to ensure total satisfaction for our customers."
- "Refinement knows no borders in the Infiniti FX."
- In the FX, there is "room for everything except compromise."

Plaintiffs contended at trial that each of these statements was a misrepresentation of material fact under section 407.020.1— or tended to convey a "false impression" under 15 CSR § 60-9.020(1)—because each of the FX vehicles at issue was sold with a defective dashboard susceptible to "bub-

bling." Even though the class included many members whose dashboards already had been replaced by Nissan without cost and many other members whose original dashboards never "bubbled," Plaintiffs claimed at trial that every class member suffered damage as a result of Nissan's alleged misrepresentations because the defective dashboards caused a general "stigma" that decreased the value of all FX vehicles.

The jury agreed and awarded each member of the class $2,000 in damages. Following a claims process, the trial court determined there were 326 members of the class. Of these, 119 class members already had received free replacement dashboards from Nissan, and there is no evidence any of the remaining class members experienced any "bubbling" with their dashboards. Nevertheless, based on the class's "stigma" claim and the jury's verdict, the trial court entered judgment against Nissan for $652,000 in damages and $1.9 million in attorney fees.

On appeal, Nissan claims the trial court erred in failing to grant its motions for directed verdict and for judgment notwithstanding the verdict because Plaintiffs failed to make a submissible case of misrepresentation under section 407.020.1. Because this Court reverses and enters judgment for Nissan on this claim, this opinion does not address, and this Court expresses no view concerning, Nissan's other claims.[2]

## Analysis

Taken in the light most favorable to the judgment, Plaintiffs failed to offer sufficient evidence for the jury to find that Nissan made an actionable misrepresentation under the MMPA. Section 407.020.1 provides, in relevant part, that the "use or employment by any person of any ... misrepresentation ... of any material fact in connection with the sale or advertisement of any merchandise ... is declared to be an unlawful practice." Under section 407.025.1, any person who purchases merchandise for "personal, family or household purposes" and "thereby suffers an ascertainable loss of money or property ... as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action" to recover their "actual damages." If the unlawful practice causes similar injuries to numerous persons, class actions are permitted under section 407.025.2. If successful, the trial court may award attorney fees to the plaintiff or class under section 407.025.1.

Plaintiffs' theory of the case was that Nissan's statements set forth above to the effect that the FX vehicles were "luxury" or "premium" vehicles were false or misleading because the dashboards were defective and, therefore, those statements were actionable "misrepresentations" under section 407.020.1. Both parties (and the Attorney General, as *amicus curiae*) focus their arguments on whether Nissan's statements are actionable or whether they are mere "puffery," i.e., statements that may sound like objective facts but that are merely opinions unsusceptible of proof or refutation. *See Clark v. Olson*, 726 S.W.2d 718, 719–20 (Mo. banc 1987) (at common law, a claim for fraudulent misrepresenta-

2. Nissan also claims the trial court erred in: (1) failing to grant its motions for directed verdict and for judgment notwithstanding the verdict because the Plaintiffs failed to make a submissible case that class members suffered an ascertainable loss under section 407.025.1; (2) excluding Nissan's proffer of a portion of the deposition of one of the class's experts; (3) admitting testimony of purchasers who were not members of the class; (4) admitting speculative testimony of class members regarding future reductions in value; and (5) certifying an improper class prior to trial and in failing to decertify that class following trial.

tion must be based on a statement of fact and "expressions of opinion are insufficient to authorize a recovery for fraudulent misrepresentation because such expressions are deemed not to be material to a transaction"); *Carrier Corp. v. Royale Inv. Co.*, 366 S.W.2d 346, 350 (Mo. 1963) (citations omitted) (objective statements of fact may be the subject of common law misrepresentation claims, but not "dealer's talk, trade talk, puffing of a manufacturer's wares, and sales propaganda").

The question of whether "puffery" is actionable under the MMPA, as opposed to the common law in which such statements generally are not actionable, is an interesting question worthy of study. But that question need not be decided in this case. The Court is willing to assume—for purposes of the present case—that, when a manufacturer represents a particular line of vehicles as "luxury" or "premium" or the like, those statements are sufficiently factual for this Court to leave to a jury the questions of whether those representations were false in a particular case and, if so, whether they were material.

This assumption, however, makes clear the shortcoming in Plaintiffs' evidence is not with the form or content of Nissan's statements but with the lack of evidence that those statements were false. Even assuming Nissan's representations the FX vehicles were "premium" and "luxury" and the like are factual statements, those statements could not have been false or misleading representations unless there is

proof the FX vehicles were constructed with low-end, "economy," or "standard" accoutrements.[3] Here, there was no evidence the dashboards included in the FX vehicles were low-end, "economy" or even "standard" dashboards. Instead, the evidence was that these were luxury dashboards that were defective, i.e., susceptible to "bubbling" in some circumstances. There was no evidence from which the jury could find the members of the class reasonably understood Nissan's representation that the FX vehicles were "luxury" and "premium" to mean that every part in those vehicles was entirely free of defect. To the contrary, Nissan's inclusion of a warranty covering defects in the dashboard (along with numerous other parts) makes such an inference unreasonable.

In short, the Court leaves for another day the debate as to where the MMPA draws the line between mere "puffery" and actionable statements of fact. Here, even assuming Nissan's statements that the FX vehicles were "luxury" and "premium" and the like were in the latter category, there was no evidence from which the jury reasonably could find those statements were false. Accordingly, it was error for the trial court not to grant Nissan's motions for directed verdict and for judgment notwithstanding the verdict.

## Conclusion

For the reasons set forth above, the judgment below is reversed and this Court enters judgment for Nissan pursuant to

---

**3.** *See* Webster's Third New International Dictionary (1961) at 1349 (defining "luxury" to mean, in relevant part, "an indulgence in ornament or convenience beyond the indispensable minimum"); *id.* at 1789 (defining "premium" to mean, in relevant part, "of exceptional quality or ability ... [or] commanding a higher than usual price esp. because of superior quality"). These definitions make clear that, in the situation at hand, the antithesis of a "luxury" or "premium" vehicle would be one built to low-end, "economy" or "standard" specifications, not one built to high-end specifications but with a defective part. To be sure, a vehicle could be riddled with so many defects so as to render false a representation that the vehicle was "luxury" or "premium," but this would take more than the single defect identified by Plaintiffs in this case.

Rule 84.14 (an appellate court "shall ... give such judgment as the court ought to give").

Fischer, C.J., Russell, Breckenridge and Stith, JJ., concur;

Draper, J. dissents.

Powell, J., not participating.